1
2
3
4
5
6
7
8              IN THE UNITED STATES DISTRICT COURT
9            FOR THE NORTHERN DISTRICT OF CALIFORNIA
10

**United States District Court**
For the Northern District of California

11   ANTHONY A. MERINO,                )   No. C 12-03277 EJD (PR)
                                       )
12              Petitioner,            )   **ORDER DENYING PETITION FOR**
                                       )   **WRIT OF HABEAS CORPUS;**
13      v.                             )   **DENYING CERTIFICATE OF**
                                       )   **APPEALABILITY**
14   MATHEW CATE, et al.               )
                                       )
15              Respondents.           )
                                       )
16                                     )
                                       )
17   _____  )

18         Petitioner has filed a <u>pro se</u> petition for a writ of habeas corpus under 28

19   U.S.C. § 2254 challenging his state conviction.  For the reasons set forth below, the

20   Petition for a Writ of Habeas Corpus is **DENIED**.

21

22                              **BACKGROUND**

23         Petitioner was found guilty by a jury in San Francisco County Superior Court

24   of committing a lewd and lascivious act on a child 14 or 15 years old (Pen. Code §

25   288, subd. (c)(1))[1] (count one), false imprisonment (§ 236) (count two), indecent

26   exposure (§ 314.1) (count five), and lewd conduct in public (§ 647, subd. (a))

27   _____
28         [1]All future statutory references are to the California Penal Code unless
       otherwise indicated.

Order Denying Petition; Denying COA
P:\PRO-SE\EJD\HC.12\03277Merino_denyHC.wpd

(counts four and six).  Petitioner was sentenced on May 20, 2009, to two years in state prison.  (Id.)  Petitioner is currently on parole, which is sufficient to satisfy the custody requirement.  28 U.S.C. § 2254(a).

Petitioner appealed his conviction, and the state appellate court affirmed.  (Id. at 3.)  The state high court denied review.  (Id.)

Petitioner filed the instant federal habeas petition on June 25, 2012.


**FACTUAL BACKGROUND**

The California Court of Appeal summarized the facts as follows:

**I.      The Prosecution's Case**

**A.      The Uncharged Milpitas Offense.**

In March 2003, Kathleen G. was sitting in the driver's seat of her car in Milpitas talking on a cellular telephone.  Just as she hung up, a man approached her car window with his penis exposed.  The man then proceeded to masturbate and tap his penis against the window as Kathleen G. screamed and turned away.  After ejaculating on her window, the man left in a green Toyota Camry.

Kathleen G. called the police, who came to the scene and collected a semen sample from the pavement near her vehicle.  At trial, criminalist Opritsa Tudoriu testified that she tested the sample, positively identifying it as semen, and then performed DNA analysis on it.  After creating a genetic profile from the sample, Tudoriu entered the information into the laboratory's computer system.  However, no one was ultimately charged for the incident, and the DNA evidence was destroyed pursuant to police policy once the statue of limitations expired.

**B.      The Cindy T. Incident (Counts One and Two).**

The same year, on October 14, 2003, Cindy T., a high school sophomore, was walking in San Francisco on 25th Avenue towards Fulton Street.  During her walk, Cindy T. approached a green two-door car with no license plate parked in a driveway and blocking the sidewalk.  As she attempted to walk around the car, a man wearing sunglasses and a hooded sweatshirt grabbed her arm and pulled her to the corner of the driveway.  Although Cindy T. tried to free herself by elbowing the man in the stomach, he managed to pin her against the wall, where he proceeded to expose his penis and masturbate while groaning.   When the man finished, he kissed her on the forehead before releasing her.  Cindy T. fled and, after looking back to make sure the man was gone, called 911.

Cindy T. later gave her jeans, which had white spots on them from

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

the incident, to police.  At trial, criminalist Armand Tcheong testified that Cindy's jeans tested positive for semen.  Tcheong further explained that the crime lab extracted DNA from the sample, made copies of it, ran it through a genetic analyzer, and entered the data into a computer program to generate a genetic profile for the sample.

Initially, there was no reference sample with which to compare the sample taken from Cindy T.'s jeans.  However, about a year later, police collected a DNA sample from defendant, which Tcheong compared to the genetic profile taken from the sample on Cindy's jeans.  Based on this comparison, Tcheong opined defendant could not be excluded as a potential donor of the sample.

Tcheong also reviewed a report analyzing the DNA taken from the scene of the Milpitas incident and concluded based on the genetic profile that defendant could not be excluded as a potential donor of that sample either.  Tcheong explained the "Same genetic profile for semen on Cindy T.'s jeans is estimated to occur at random among unrelated individuals in approximately one in 560 billion U. S. Caucasians, one in one trillion African-Americans, and one in 1.3 trillion California Hispanics and one in 1.9 trillion individuals from the general Asian popultaion."

### C.    The Julie S. Incident (Counts Three and Four).

On September 9, 2004 around 6:00 p.m., Julie S. looked out her upstairs kitchen window on Ulloa Street near 42nd Avenue in San Francisco, and saw a dark green Camry pull into her neighbor's driveway.  Julie S. could see through the car's windshield a heavyset man with olive-colored skin sitting inside with his shirt pulled up and pants pulled down.  The man's genitals were exposed and he was moving his hand along his erect penis.  She could not see his face, but she did see children playing outside a few houses away, prompting her to tell her own children to stay in the backroom of their house while she wrote down the car's license plate.  Julie S. then yelled out to the man, causing him to look up, at which point she could see his face.  She ran downstairs and told the man she was writing down his license plate, and the man drove off.  At this point, she realized the car had no license plate, but she did see the word "Camry" in gold lettering on the back.

Julie S. called 911, describing the man as having dark hair parted on the side, a very full face with dark sunglasses, a big gut and hairless chest.  Shortly thereafter, Julie S. helped police develop a sketch of the man and, on November 30, 2004, she identified defendant out of a police lineup, noting his hair was combed differently.

### D.    The Maria A. Incident (Counts Five and Six).

On September 28, 2004 at around 2:45 p.m., Maria A., a high school senior, was walking home from school in San Francisco near the intersection of Eucalyptus and Clearfield Drive.  A tall, heavyset Caucasian man with thick lips and a large jaw approached her from around a car wearing sunglasses and a hooded sweatshirt.  The man

reached towards Maria A. with one hand, asking, "Hey, can you help me?" With his other hand, the man rubbed his exposed penis. Maria fled and called 911 as soon as she was sure the man was not following her.

An officer in a marked police car responded to Maria A.'s call. Shortly thereafter, officers observed the man park his car in a driveway on 37th Avenue, exit the car, and stand facing the residence with his pants down. He then did the same thing at another residence near Santiago Avenue and 39th Avenue. At this point, one of the officers followed the man intermittently for 10 to 20 minutes, during which time he made several U-turns, appearing to drive without purpose. The officers finally stopped the man on 37th Avenue, ordering him out of the car. They observed a noticeable bulge in the man's crotch area and found a jar of KY jelly in the car's center console.

## II.     The Defense Case.

Defendant testified at trial that he ended a 17-year relationship with his girlfriend in 2001. In 2002, he began exercising and taking dietary supplements to look and feel better and to meet women. These supplements caused him to urinate frequently.

With respect to the March 2003 Milpitas incident, defendant acknowledged approaching Kathleen G.'s car and knocking on her window to ask whether she was interested in having sex. Defendant explained that, earlier in the night, he had visited a Milpitas nightclub hoping to meet a woman to have a consensual sexual encounter. However, he did not meet such woman at the nightclub and saw Kathleen G. sitting in her car as he was leaving. Defendant believed after knocking on her car window that Kathleen was agreeable to his advances, so he began to rub his leg and then pulled out his penis to masturbate. According to defendant, Kathleen laughed and looked interested before he eventually ejaculated and left.

With respect to the Cindy T. incident on October 14, 2003, defendant likewise acknowledged having an encounter with her, albeit under circumstances different than she reported to police. According to defendant, earlier in the day, he had gone to Ocean Beach in San Francisco to exercise, after which he returned to his car with a prostitute, who proceeded to engage in oral sex with him after pulling out a condom. When this encounter ended, defendant dropped the prostitute off at 25th Avenue and Geary Boulevard, driving to Cabrillo and Fulton Streets, where he pulled over with car trouble. Defendant realized once leaving his car to look under the hood that his sweat pants were falling down and he was still wearing the condom. As he was about to remove the condom, Cindy T. approached. Using one hand to hold up his pants, defendant gestured to her to walk past him, but instead the girl stopped. Flustered he grabbed her to push her away, at which point she punched him in the testicles and lower stomach. He pulled Cindy towards him to stop her attack, telling her to go away, which she eventually did.

United States District Court

For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Appellate denied having any contact with Julie S., insisting it was a case of mistaken identity and noting he never parted his hair on the side and did not have a hairless chest.

With respect to Maria A. incident on September 28, 2004, defendant again acknowledged it occurred, but claimed the circumstances differed from what the victim reported to police. Defendant explained he pulled over in a residential area on Eucalyptus Drive after exercising at Lake Merced because he needed to urinate. He parked his car and stood between it and the curb to urinate after making sure no one was around. Because defendant had a problem that sometimes causes his urine stream to split into two directions, wetting his clothing, he massaged his penis before starting. Just then, Maria A. approached him, prompting defendant to attempt to zip his pants. However, his zipper got stuck, at which point Maria began screaming and fleeing in the opposite direction.

Defendant returned to his car and drove off, but then stopped again on 37th Avenue because he still needed to urinate. However, there were too many people around so he left, eventually stopping again on 39th Avenue. Defendant did not urinate at this location either, however, because he was concerned about urinating in someone's garage. After returning to his car, defendant began to suspect he was being followed. He continued driving, trying to determine what to do. When he eventually stopped again on 37th Avenue, a police car blocked him and an officer approached with his gun drawn. At this point, defendant was arrested.

Defendant admitted owning a Toyota Camry with gold lettering. His car did not have a license plate between March and November 2004 because he was having custom plates made. He customarily kept KY jelly in his car in case he met someone and had a sexual encounter.

## III.    The Verdicts, Sentence, and Appeal.

On January 22, 2009, the jury found defendant not guilty of count three, indecent exposure with respect to Julie S. The next day, however, the jury found him guilty of all remaining counts.

On May 20, 2009, defendant was sentenced to two years in state prison and, a week later, he filed a timely notice of appeal.

(Ans. Ex. 6 at 2-6.)

## DISCUSSION

I.   <u>Standard of Review</u>

This Court may entertain a petition for a writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that

United States District Court

For the Northern District of California

1  he is in custody in violation of the Constitution or laws or treaties of the United

2  States." 28 U.S.C. § 2254(a).  The writ may not be granted with respect to any

3  claim that was adjudicated on the merits in state court unless the state court's

4  adjudication of the claim:  "(1) resulted in a decision that was contrary to, or

5  involved an unreasonable application of, clearly established Federal law, as

6  determined by the Supreme Court of the United States; or (2) resulted in a decision

7  that was based on an unreasonable determination of the facts in light of the evidence

8  presented in the State court proceeding."  28 U.S.C. § 2254(d).

9       "Under the 'contrary to' clause, a federal habeas court may grant the writ if

10  the state court arrives at a conclusion opposite to that reached by [the Supreme]

11  Court on a question of law or if the state court decides a case differently than [the]

12  Court has on a set of materially indistinguishable facts."  Williams v. Taylor, 529

13  U.S. 362, 412-13 (2000).  The only definitive source of clearly established federal

14  law under 28 U.S.C. § 2254(d) is in the holdings (as opposed to the dicta) of the

15  Supreme Court as of the time of the state court decision.  Williams, 529 U.S. at 412;

16  Brewer v. Hall, 378 F.3d 952, 955 (9th Cir. 2004).  While circuit law may be

17  "persuasive authority" for purposes of determining whether a state court decision is

18  an unreasonable application of Supreme Court precedent, only the Supreme Court's

19  holdings are binding on the state courts and only those holdings need be

20  "reasonably" applied.  Clark v. Murphy, 331 F.3d 1062, 1069 (9th Cir.), overruled

21  on other grounds by Lockyer v. Andrade, 538 U.S. 63 (2003).

22       "Under the 'unreasonable application' clause, a federal habeas court may

23  grant the writ if the state court identifies the correct governing legal principle from

24  [the Supreme Court's] decisions but unreasonably applies that principle to the facts

25  of the prisoner's case."  Williams, 529 U.S. at 413.  "Under § 2254(d)(1)'s

26  'unreasonable application' clause, . . . a federal habeas court may not issue the writ

27  simply because that court concludes in its independent judgment that the relevant

28  state-court decision applied clearly established federal law erroneously or

incorrectly." Id. at 411.  A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." Id. at 409.  The federal habeas court must presume correct any determination of a factual issue made by a state court unless the petitioner rebuts the presumption of correctness by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).

The state court decision to which Section 2254(d) applies is the "last reasoned decision" of the state court.  See Ylst v. Nunnemaker, 501 U.S. 797, 803-04 (1991); Barker v. Fleming, 423 F.3d 1085, 1091-92 (9th Cir. 2005).  When there is no reasoned opinion from the highest state court considering a petitioner's claims, the court "looks through" to the last reasoned opinion.  See Ylst, 501 U.S. at 805.  In this case, the last reasoned opinion is that of the California Court of Appeal.  (Ans. Ex. 6.)

The Supreme Court has vigorously and repeatedly affirmed that under AEDPA, there is a heightened level of deference a federal habeas court must give to state court decisions.  See Hardy v. Cross, 132 S. Ct. 490, 491 (2011) (per curiam); Harrington v. Richter, 131 S. Ct. 770, 783-85 (2011); Felkner v. Jackson, 131 S. Ct. 1305 (2011) (per curiam).  As the Court explained:  "[o]n federal habeas review, AEDPA 'imposes a highly deferential standard for evaluating state-court rulings' and 'demands that state-court decisions be given the benefit of the doubt.'" Id. at 1307 (citation omitted).  With these principles in mind regarding the standard and limited scope of review in which this Court may engage in federal habeas proceedings, the Court addresses Petitioner's claims.

II.    Claims and Analysis

Petitioner claims the following as grounds for federal habeas relief: (1) the trial court erred in admitting evidence to show Petitioner's propensity for committing sex offense, violating his right to due process and a fair trial; (2) instructing the jury with CALCRIM 1191 violated Petitioner's right to due process

United States District Court
For the Northern District of California

United States District Court

For the Northern District of California

1   because it permitted a conviction based on an uncharged misconduct found true by a

2   preponderance of the evidence; and (3) Petitioner's right to confrontation was

3   violated where the DNA expert's testimony was based upon the analysis of a non-

4   testifying criminalist.

5       A.    Admission of Propensity Evidence

6       Petitioner's first claim is that he was denied his right to due process and a fair

7   trial when the trial court admitted evidence of his propensity for committing sexual

8   offenses, including the earliest and uncharged incident involving Kathleen G.  The

9   trial court found the evidence admissible under Evidence Code § 1108, over

10  Petitioner's objection that it was more prejudicial than probative under Evidence

11  Code § 352.[2]

12      The California Court of Appeal rejected the due process claim pursuant to

13  state supreme court precedent under People v. Falsetta, 21 Cal.4th 903, 917 (1999),

14  which held that "the trial court's discretion to exclude propensity evidence under

15  [Evidence Code] section 352 saves section 1108 from defendant's due process

16  challenge."  (Ans. Ex. 6 at 8.)  The state appellate court also rejected an equal

17  protection challenge – not a claim presented in the instant petition – under People v.

18  Fitch, 55 Cal.App.4th 172, 184-185, which reasoned as follows: "[a]n equal

19  protection challenge to a statute that creates two classifications of accused or

20  convicted defendants, without implicating a constitutional right, is subject to a

21  rational-basis analysis.  (citation omitted.)... [S]ection 1108 withstands this relaxed

22  scrutiny.  The Legislature determined that the nature of sex offense, both their

23

24      [2]California Evidence Code § 1108(a) states: "In a criminal action in which
    the defendant is accused of a sexual offense, evidence of the defendant's
25  commission of another sexual offense or offenses is not made inadmissible by
    Section 1101, if the evidence is not inadmissible pursuant to Section 352."
26  Evidence Code § 352 gives the trial court discretion to exclude evidence "if its
    probative value is substantially outweighed by the probability that its admission will
27  (a) necessitate undue consumption of time or (b) create substantial danger of undue
    prejudice, of confusing the issues, or of misleading the jury."
28

United States District Court

For the Northern District of California

seriousness and their secretive commission which results evidence of a defendant's

commission of other sex offense.  This reasoning provides a rational basis for the

law."  (Id.)  The appellate court then found that the evidence was properly admitted:

> ... Here, the trial court recognized when admitting the evidence that,
> like the charged offenses in this case, the uncharged Milpitas offense
> involved defendant (admittedly) exposing himself and masturbating
> in front of an unknown female victim in public.  Thus, aside from the
> facts that Kathleen G. was an adult while Cindy T. and Maria A.
> were minors and, unlike the minors, was protected from defendant's
> acts by the glass of her car window, "the major features of the prior
> sexual conduct closely resembled those in the current charges."  (See
> *People v. Miramontes* (2010) 189 Cal.App.4th 1085, 1102 [affirming
> trial court's admission of evidence of uncharged sexual offense
> under section 352].)  In addition, we note that the uncharged sexual
> offense occurred the same year as the first of defendant's charged
> offense and within two years of the other charged offenses, rendering
> the evidence even more relevant and less prejudicial due to its
> nearness in time.  (Cf. *People v. Johnson* (2010) 185 Cal.App.4th
> 520, 534-535 [concluding prior offense occurring nine years before
> the charged offense were not too remote in time to be probative
> given the significant similarities between the offenses].)
>
> Finally, we add that the trial court instructed the jury to consider the
> evidence relating to the uncharged Milpitas offense only if the
> prosecution first proved it by a preponderance of the evidence.  The
> jury was also instructed that "[i]f you decide that the defendant
> committed the uncharged offense, you may, but are not required to
> conclude from that evidence that the defendant was disposed or
> inclined to commit sexual offense, and based on that decision, also
> conclude that the defendant was likely to commit and did commit the
> crimes charged here. [¶] If you conclude that the defendant
> committed the uncharged offense, that conclusion is only one factor
> to consider with all of the other evidence.  It is not sufficient by itself
> to prove that the defendant is guilty of the charged sexual offenses.
> [¶]... The People must still prove each element of every charge
> beyond a reasonable doubt."  These instructions restricting the jury's
> consideration of the evidence, we conclude, protected defendant
> against any undue prejudice.
>
> Thus, under these circumstances, we believe the prejudice presented
> by the evidence of defendant's prior sexual offense in Milpitas was
> not undue, but was merely the type inherent in all propensity
> evidence.  (See *People v. Soto*, *supra*, 64 Cal.App.4th at p. 992; cf.
> *People v. Harris* (1998) 60 Cal.App.4th 727, 737 ["[p]ainting a
> person faithfully is not, of itself, unfair"].)  The Legislature enacted
> section 1108 with an understanding of this inherent prejudice, yet
> specifically found such prejudice insufficient without more to render
> propensity evidence inadmissible.  (See *People v. Soto*, *supra*, 64
> Cal.App.4th at p. 992.)  We decline to second-guess the Legislature's
> decision in this regard.  Accordingly, we affirm the trial court's
> admission of the evidence relating to the uncharged Milpitas as
> within the proper scope of its discretion.

(Ans. Ex. 6 at 9-10.)

      This claim challenging the admission of propensity evidence fails to state a claim warranting federal habeas relief.  The United States Supreme Court left open the question of whether admission of propensity evidence violates due process.  Estelle v. McGuire, 502 U.S. 62, 75 n. 5 (1991).  Therefore, the Ninth Circuit held that a petitioner's federal due process right concerning the admission of propensity evidence is not clearly established for purposes of review under AEDPA.  Alberni v. McDaniel, 458 F.3d 860, 866-67 (9th Cir. 2006); accord Mejia v. Garcia, 534 F.3d 1036, 1046 (9th Cir. 2008) (reaffirming Alberni).  See, e.g., Larson v. Palmateer, 515 F.3d 1057, 1066 (9th Cir. 2008) (because Supreme Court expressly reserved the question of whether using evidence of prior crimes to show propensity for criminal activity could ever violate due process, state court's rejection of claim did not unreasonably apply clearly established federal law).  The fact that propensity evidence was an uncharged offense does not change the result as the Ninth Circuit further held that the state court's admission of uncharged offenses is not an unreasonable application of general due process principles of the Supreme Court as set forth in Loper v. Beto, 405 U.S. 473 (1972), which prohibits the introduction of uncounseled convictions to impeach a defendant's credibility in violation of due process under Gideon v. Wainright, 372 U.S. 335 (1963).  Mejia, 534 F.3d at 1046-47.  Accordingly, it cannot be said that Petitioner has presented a § 2254 claim where there is no clearly established federal law.

      Petitioner's second argument that the prejudicial effect of the propensity evidence outweighed its probative value also fails.  To the extent that he is challenging the state appellate court's determination that the evidence was admissible under state law, such a determination, including one announced on direct appeal of the challenged conviction, is binding on this Court sitting in habeas corpus.  Bradshaw v. Richey, 546 U.S. 74, 76 (2005); Hicks v. Feiock, 485 U.S. 624, 629 (1988).  Moreover, the Supreme Court "has not yet made a clear ruling

United States District Court
For the Northern District of California

1   that admission of irrelevant or overtly prejudicial evidence constitutes a due process

2   violation sufficient to warrant issuance of the writ."  Holley v. Yarborough, 568 F.3d

3   1091, 1101 (9th Cir. 2009) (finding that trial court's admission of irrelevant

4   pornographic materials was "fundamentally unfair" under Ninth Circuit precedent

5   but not contrary to, or an unreasonable application of, clearly established Federal

6   law under § 2254(d)).  Furthermore, the admission of evidence is not subject to

7   federal habeas review unless a specific constitutional guarantee is violated or the

8   error is of such magnitude that the result is a denial of the fundamentally fair trial

9   guaranteed by due process.  See Henry v. Kernan, 197 F.3d 1021, 1031 (9th Cir.

10  1999); Colley v. Sumner, 784 F.2d 984, 990 (9th Cir.), cert. denied, 479 U.S. 839

11  (1986).  Due process is violated only if there are "no permissible inferences the jury

12  may draw from the evidence."  Jammal v. Van de Kamp, 926 F.2d 918, 920 (9th Cir.

13  1991).

14        Here, the Court finds that there was no error of such magnitude that the result

15  was a denial of Petitioner's right to a fair trial.  Rather, the state court's decision was

16  not "unreasonable" within the meaning of 28 U.S.C. § 2254(d)(1) because the record

17  shows that the potentially prejudicial impact of the evidence was "substantially

18  outweighed" by its probative value: (1) the major features of the uncharged Milpitas

19  offense closely resembled the charged offenses, i.e., Petitioner exposed himself and

20  masturbated in front of unknown female victims in public; and (2) the first incident

21  occurred closely in time to the subsequent offenses.  See supra at 9.  Such evidence

22  was sufficient for a jury to make the permissible inference that Petitioner committed

23  the uncharged offense and therefore was "disposed or inclined to commit sexual

24  offenses."  Id.  Accordingly, it cannot be said that the admission of this evidence

25  violated Petitioner's right to due process.

26        Lastly, the trial court also gave limiting instructions to the jury to protect

27  Petitioner from any undue prejudice, i.e., "to consider the evidence relating to the

28  uncharged Milpitas offense only if the prosecution first proved it by a preponderance

of the evidence," that if the jury concluded that Petitioner committed the uncharged

offense, that conclusion "is only one factor to consider with all of the other

evidence," and that the "People must still prove each element of every charge

beyond a reasonable doubt."  Id.  This Court must presume that the jury followed its

instructions and used the evidence appropriately.  See Richardson v. Marsh, 481

U.S. 200, 206 (1987).

Because the state court's rejection of this claim was not contrary to, or

involved an unreasonable application of, Supreme Court precedent, Petitioner is not

entitled to federal habeas relief based on his challenge to the admission of propensity

evidence.  28 U.S.C. § 2254(d)(1).

B.      Jury Instructions

Petitioner's second claim is that the jury instruction on propensity evidence,

CALCRIM 1191, violated due process because it permitted a conviction "solely on

the basis of uncharged misconduct found true by a preponderance of the evidence."

(Pet. Attach. at 19.)  As given to the jury, CALCRIM 1191 states:

> The People presented evidence that the defendant committed the
> crime of indecent exposure that was not charged in this case.  This
> crime is defined for you in these instructions.
>
> You may consider this evidence only if the People have proved by a
> preponderance of the evidence that the defendant in fact committed
> the uncharged offense.  Proof by a preponderance of the evidence is
> a different burden of proof from proof beyond a reasonable doubt.  A
> fact is proved by a preponderance of the evidence if you conclude
> that it is more likely than not that the fact is true.
>
> If the People have not met this burden of proof, you must disregard
> this evidence entirely.
>
> If you decide that the defendant committed the uncharged offense,
> you may, but are not required to, conclude from that evidence that
> the defendant was disposed or inclined to commit sexual offenses,
> and based on that decision, also conclude that the defendant was
> likely to commit and did commit, the crimes charged here.  If you
> conclude that the defendant committed the uncharged offense, that
> conclusion is only one factor to consider along with all the other
> evidence.  It is not sufficient by itself to prove that the defendant is
> guilty of the charged sexual offenses.  The People must still prove
> each element of every charge beyond a reasonable doubt.

1    Do not consider this evidence for any other purpose.

2

3    (Clerk's Transcript ("CT") at 685; Ans., Ex. 1.)

4         The state appellate court rejected Petitioner's facial challenge to the jury

5    instruction under state supreme court precedent.

6              Specifically, in *People v. Reliford* (2003) 29 Cal.4th 1007, the
         California Supreme Court found "no constitutional error" in the 1999
7              version of CALJIC 2.50.01, the predecessor of CALCRIM 1191.
         (*People v. Reliford*, *supra*, 29 Cal.4th at p. 1016; see also *People v.*
8              *Falsetta*, *supra*, 21 Cal.4th at p. 917.)  Here, the trial court instructed
         the jury on a version of CALCRIM 1191 that was in all significant
9              respects the same as the version of CALJIC 2.50.01 approved by the
         California Supreme Court in *People v. Reliford*.  "The version of
10             CALJIC 2.50.01 considered in *Reliford* is similar in all material
         respects to CALCRIM 1191... in its explanation of the law on
11             permissive inferences and the burden of proof."  (*People v. Schnabel*
         (2007) 150 Cal.App.4th 83, 87.)

12             In particular, we note that, in direct conflict with defendant's
         arguments, the California Supreme Court held in *People v. Reliford*
13             that permitting jurors based on CALCRIM 1191 to infer that the
         defendant has a disposition to commit sex crimes from evidence he
14             has committed other sex offense, and then to infer from this
         predisposition that he was "likely to commit and did commit the
15             charged offense," is rational.  (*People v. Reliford*, *supra*, 29 Cal.4th
         at pp. 1012-1013.)  The court also rejected an argument similar to
16             defendant's that, "having found the uncharged sex offense true by a
         preponderance of the evidence, jurors would rely on 'this alone' to
17             convict him of the charged offenses."  As the court explained, the
         jury was in fact told just the opposite – that they could not convict
18             the defendant solely on evidence of the prior offense, but only if
         each element of the charged offense was proven beyond a reasonable
19             doubt.  (*Id.* at p. 1013.)  "No reasonable juror would believe those
         requirements could be satisfied solely by proof of uncharged
20             offenses."  (*Id.* at pp. 1013-1014.)

21             Accordingly, based on this applicable California Supreme Court
         authority, we reject defendant's constitutional challenge to
22             CALCRIM 1191.

23

24   (Ans. Ex. 6 at 11.)

25        Petitioner relies on Gibson v. Ortiz, 387 F.3d 812 (9th Cir. 2004), overruled

26   in part by Hedgepeth v. Pulido, 555 U.S. 57, 60 (2008), as recognized in Byrd v.

27   Lewis, 566 F.3d 855, 866–67 (9th Cir. 2009).  In Gibson, the Ninth Circuit held that

28   an unmodified 1996 version of CALJIC No. 2.50.01 (which unlike CALCRIM No.

1191 in this case did not include any language prohibiting a finding of guilt based solely on the other uncharged acts), in tandem with a modified version of an instruction regarding the preponderance of the evidence standard, unconstitutionally lowered the prosecution's burden of proof for the charged sexual offenses to a preponderance of the evidence standard.  Id. at 822-23.

However, the instruction in this case, CALCRIM 1191, is a modified version of CALJIC No. 2.50.01 at issue in Gibson, and contains the required language that there must be guilt beyond a reasonable doubt for the charged offense, and the commitment of the uncharged offense if found to be true, is just one factor to consider.  See supra at 12.  Just as California courts found the more recent version of the jury instruction to be proper in People v. Reliford, the Ninth Circuit reached a similar conclusion in Schultz v. Tilton, 659 F.3d 941 (9th Cir. 2011), cert. den. 132 S. Ct. 2436 (2012).   In Schultz, the Ninth Circuit held that "the California Court of Appeal did not act contrary to federal law in applying the analysis from Reliford to uphold the 2002 version of CALJIC No. 2.50.01."  Id. at 945.  Distinguishing the 2002 version of CALJIC No. 2.50.01 from the 1996 version at issue in Gibson, the Ninth Circuit noted that the 2002 version "in no way suggest[ed] that a jury could reasonably convict a defendant for charged offenses based merely on a preponderance of the evidence," but rather "made clear that Schultz could be convicted only if the evidence as a whole "proved [him] guilty beyond a reasonable doubt of the charged crime."  Id.

The instruction in Petitioner's case is substantially similar to the instruction that was found proper in Schultz, and contained the necessary language described above.  Id. at 943.  Accordingly, it cannot be said that CALCRIM 1191 was constitutionally deficient as it did not lower the burden of proof.  Petitioner is not entitled to federal habeas relief on this claim.

### C.      Right to Confrontation

Petitioner's last claim is that the trial court violated his Sixth Amendment

United States District Court

For the Northern District of California

1   right to confrontation by permitting the prosecution's expert witness, Armand

2   Tcheong, to testify regarding the laboratory analyses of two non-testifying

3   criminalists involved in the DNA testing in this case.  The record shows that the two

4   criminalists were only involved in testing the DNA evidence in the Cindy T.

5   incident.  (Reporter's Transcript ("RT") at 1474-1474, 1501-1503; Ans., Ex. 2.)

6   Petitioner relies on Melendez-Diaz v. Massachusetts, 129 S. Ct. 2527 (2009), which

7   held that the prosecution may not prove its case with ex-parte out-of-court affidavits

8   in the form of sworn certificates from state laboratory analysts stating that material

9   seized by police from the defendant was cocaine because the certificates were

10   "testimonial statements" that implicated the defendant's right to confrontation under

11   the Sixth Amendment.  For the purpose of this review, the Court will assume that the

12   challenged evidence was "testimonial" under Crawford v. Washington, 541 U.S. 36,

13   50-51 (2004).

14        The Confrontation Clause of the Sixth Amendment provides that in criminal

15   cases the accused has the right to "be confronted with the witnesses against him."

16   U.S. Const. amend. VI.  The ultimate goal of the Confrontation Clause is to ensure

17   reliability of evidence, but it is a procedural rather than a substantive guarantee.

18   Crawford, 541 U.S. at 61.  It commands, not that evidence be reliable, but that

19   reliability be assessed in a particular manner: by testing in the crucible of cross-

20   examination.  Id.; see Davis v. Alaska, 415 U.S. 308, 315-16 (1974) (noting a

21   primary interest secured by the Confrontation Clause is the right of cross-

22   examination).

23        Confrontation Clause claims are subject to harmless error analysis.  United

24   States v. Nielsen, 371 F.3d 574, 581 (9th Cir. 2004) (post-Crawford case); see also

25   United States v. Allen, 425 F.3d 1231,1235 (9th Cir. 2005).  For purposes of federal

26   habeas corpus review, the standard applicable to violations of the Confrontation

27   Clause is whether the inadmissible evidence had an actual and prejudicial effect

28   upon the jury.  See Hernandez v. Small, 282 F.3d 1132, 1144 (9th Cir. 2002) (citing

1    Brecht v. Abrahamson, 507 U.S. 619, 637 (1993)); Webb v. Lewis, 44 F.3d 1387,

2    1393 (9th Cir. ) (same).  The standard on direct review of federal criminal

3    convictions is "harmless beyond a reasonable doubt."  Nielsen, 371 F.3d at 581.

4         The state appellate court ultimately rejected this claim, finding that any error

5    was harmless beyond a reasonable doubt:

6          ... Under the harmless error analysis, defendant is not entitled to
           reversal on Sixth Amendment grounds if it is clearly beyond a
7          reasonable doubt that a reasonable jury would have found him guilty
           even without the error.  (*People v. Geier*, *supra*, 41 Cal.4th at p.
8          608.)  In this case, a reasonable jury could indeed have made this
           finding.
9
           As set forth above, defendant admitted being at the scene of both the
10         Maria A. and Cindy T. incidents and having his penis exposed
           (albeit, he claims, for innocent reasons).  In addition, both Maria A.
11         and Julie S. identified him in a police lineup or showup, and Cindy
           T. and Julie S. both identified his car.  Even more significant, each of
12         the victim's descriptions of his behavior – exposing his penis and
           masturbating in public in the outer west part of San Francisco – is
13         remarkably consistent in all important respects.

14         Nonetheless, despite this record, defendant claims that "[w]ithout the
           DNA evidence, there was nothing to link appellant to the uncharged
15         incident."  But defendant's own admission belies such a claim.
           Indeed, he not only admitted being present at the scene of the
16         uncharged Milpitas incident, he admitted masturbating in front of the
           victim and ejaculating outside her car, thereby impliedly admitting
17         the semen found at the scene could be his.  Further, with respect to
           defendant's related claim that his defense that he was merely
18         urinating in front of victim Maria A. "was much less believable in
           the face of DNA evidence showing that he had masturbated in front
19         of other women," we simply note his own admission of masturbating
           in front of another female victim undermines this defense, aside from
20         any DNA evidence.

21         Thus in light of the strong evidence supporting defendant's
           conviction for the charged offenses, we conclude the judgment must
22         be affirmed whether or not the DNA evidence realting to the
           uncharged offense qualified as testimonial for purposes of the Sixth
23         Amendment.

24   (Ans. Ex. 6 at 13-14.)

25         Because the state appellate court never reached the question of whether there

26   was a constitutional error, this Court may consider the issue de novo.  However,

27   AEDPA does not require a federal habeas court to adopt any particular methodology

28

United States District Court

For the Northern District of California

1   in deciding whether a state court decision is contrary to or an unreasonable

2   application of clearly established federal law.  Lockyer v. Andrade, 538 U. S. 63, 71

3   (2003) (overruling requirement in Van Tran v. Lindsey, 212 F.3d 1143, 1149-50

4   (9th Cir. 2000), that the court review the state court decision de novo before

5   applying § 2254 standard of review); Clark v. Murphy, 331 F.3d 1062, 1068-69 (9th

6   Cir.), cert. denied, 540 U.S. 968 (2003) (acknowledging the overruling of Van Tran

7   on this point).  In some cases, it may be easier to review a state court's application of

8   federal law for error and, if there was none, conclude that the state-court decision

9   was not unreasonable.  See Weighall v. Middle, 215 F.3d 1058, 1063 (9th Cir.

10  2000).

11        Here, the Court finds that the state court's rejection of this claim as harmless

12  error was not contrary to, or involved an unreasonable application of, Supreme

13  Court precedent.  28 U.S.C. § 2254(d)(1).  Federal habeas relief is in order only if

14  the admission at issue "had substantial and injurious effect or influence in

15  determining the jury's verdict." Brecht, 507 U.S. at 623.  The DNA evidence at issue

16  was certainly relevant to identifying Petitioner as the offender in the Cindy T.

17  incident, but as the state appellate court found, there was other strong evidence to

18  support the convictions: Petitioner admitted being at the scene of the Maria A. and

19  Cindy T. incidents and exposing his penis; Maria A. and Julie S. identified Petitioner

20  in a police lineup or showup; Cindy T. and Julie S. identified Petitioner's car; each

21  victim's descriptions of Petitioner's behavior, i.e., "exposing his penis and

22  masturbating in public in the outer west part of San Francisco," was remarkably

23  consistent in all important respects; Petitioner admitted being present at the scene of

24  the uncharged Milpitas incident, as well as masturbating in front of the victim and

25  ejaculating outside her car; and Petitioner's admission of masturbating in front of

26  one of the female victims undermines his defense that he was merely urinating

27  during the Maria A. incident.  See supra at 4-5, 16.  In light of Petitioner's own

28  admissions, the identifications by the victims, and Petitioner's weak defense, it

1   cannot be said that the challenged DNA evidence with respect to the Cindy T.

2   incident had a "substantial and injurious effect" on the jury's verdict on all the

3   convictions.  Brecht, 507 U.S. at 623.  Accordingly, Petitioner is not entitled to

4   habeas relief on this claim.

5

6                                    **CONCLUSION**

7          After a careful review of the record and pertinent law, the Court concludes

8   that the Petition for a Writ of Habeas Corpus must be **DENIED**.

9          Further, a Certificate of Appealability is **DENIED**.  See Rule 11(a) of the

10  Rules Governing Section 2254 Cases.  Petitioner has not made "a substantial

11  showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  Nor has

12  Petitioner demonstrated that "reasonable jurists would find the district court's

13  assessment of the constitutional claims debatable or wrong."  Slack v. McDaniel,

14  529 U.S. 473, 484 (2000).  Petitioner may not appeal the denial of a Certificate of

15  Appealability in this Court but may seek a certificate from the Court of Appeals

16  under Rule 22 of the Federal Rules of Appellate Procedure.  See Rule 11(a) of the

17  Rules Governing Section 2254 Cases.

18         The Clerk shall terminate any pending motions, enter judgment in favor of

19  Respondent, and close the file.

20         IT IS SO ORDERED.

21

22  DATED: _____9/15/2014_____          _____

23                                       EDWARD J. DAVILA
                                         United States District Judge
24

25

26

27

28

United States District Court
For the Northern District of California

# UNITED STATES DISTRICT COURT

## FOR THE

## NORTHERN DISTRICT OF CALIFORNIA

ANTHONY A. MERINO,

              Petitioner,

  v.

MATHEW CATE, et al.,

              Respondents.

_____/

Case Number: CV12-03277 EJD

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on _____9/16/2014_____, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

Anthony A. Merino
P. O. Box 15756
San Francisco, CA 94115

Dated: _____9/16/2014_____

                          Richard W. Wieking, Clerk
                    /s/ By: Elizabeth Garcia, Deputy Clerk